IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
MAY 27 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

QUAYSHAWN M. DAVIDSON,

    Petitioner,

v.                     Criminal No. 2:18-cr-177-10

UNITED STATES OF AMERICA,

    Respondent.

### *MEMORANDUM OPINION & ORDER*

Before the Court is Quayshawn M. Davidson's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 542. The Government opposed the motion and Petitioner replied. ECF Nos. 547, 551. This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On March 6, 2019, Petitioner and his co-defendants were named in an Eight-Count Superseding Indictment charging Petitioner with Conspiracy to Interfere with Commerce by Means of Robbery, in violation of 18 U.S.C. 1951(a) (Count One), Interference with Commerce by Means of Robbery, in violation of 18 U.S.C. 1951(a) and 2 (Count Two), and Use of a Firearm During a Crime of Violence, in violation of 18 U.S.C. 924(c)(l)(A)(ii) and 2 (Count Three). ECF No. 141. On May 24, 2019, Petitioner pled guilty to the Counts One through Three of the Superseding Indictment. ECF Nos. 205, 207, 208. According to his Presentencing Report ("PSR"), on September 25, 2018, Petitioner and about nine other co-defendants conspired to rob a grocery store at gun point. ECF No. 513 at ¶ 15. As part of the conspiracy, Petitioner and his co-defendants used at least a seven-member team, which comprised of conspirators who served as inside and outside lookouts, getaway drivers, and two masked gunmen. *Id.* Petitioner brandished and pointed

a firearm at two employees and a customer, forced them to get on the ground, and stole approximately $4,880 from the grocery store. *Id.* As a result of the robberies, the store employees from the robbery suffered psychological problems and some were unable to return to work on the night shift and sought mental health counseling. *Id.* at ¶ 21. In his PSR, while Petitioner reported no history of psychological treatment or history of any serious or chronic medical conditions, he reported that his appendix was removed at age 20 which has resulted in some stomach problems. *Id.* at ¶¶ 59-61. In all, Petitioner was assessed a total offense level of 19, a criminal history category II, and a recommended guideline provision of 33-41 months imprisonment plus 84 months consecutive for Count Three. *Id.* at ¶¶ 76-77. On November 15, 2016, the Court imposed a sentence of Twenty-Four (24) months imprisonment on Counts One and Two, to be served concurrently, and Eighty-Four (84) Months imprisonment on Count Three to be served consecutively with Count 1, followed by five years of supervised release. ECF Nos. 281, 283. Petitioner is currently incarcerated at Butner Medium II FCI with a projected release date of December 7, 2026.

On March 1, 2021, Petitioner filed his *pro se* motion for compassionate release. ECF No. 509. On April 30, 2021, Petitioner filed the motion through counsel. ECF No. 542. On May 14, 2021, the Government responded in opposition. ECF No. 547. Petitioner replied on May 19, 2021. ECF No. 551.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic. ECF Nos. 509, 542. At age 24, Petitioner argues that his underlying condition places him at serious risk for severe illness due to COVID-19, which presents extraordinary and compelling reasons to warrant his release. *Id.* Notably, on January 21, 2021, Petitioner tested positive for COVID-19. Accordingly, Petitioner requests that the Court grant him compassionate release and allow him to begin his period of supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the

passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion. On January 21, 2021, Petitioner submitted a Compassionate Release/Reduction in Sentence request to the Warden at Butner Medium II FCI. ECF No. 509 at Exhibit 1. On January 21, 2021, his request was denied by the Warden. ECF No. 542 at Exhibit 2. Thus, more than 30 days passed since Petitioner filed his request.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. Based on his PSR, at age 23, Petitioner did not suffer from any illnesses recognized by Centers for Disease Control and Prevention ("CDC") that placed him at higher risk for serious

5

illness should he contract COVID-19. ECF No. 513.[1] Unlike other cases, the Court here does not need to speculate about the impact COVID-19 would have on Petitioner's health should he contract COVID-19 because Petitioner tested positive for COVID-19 on January 21, 2021. ECF No. 542 at Exhibit 1; *see also,* ECF No. 544 (sealed BOP medical records). According to Petitioner's counsel, on January 11, 2021, Petitioner's cellmate tested positive for COVID-19 and Petitioner "was forced to remain in the same contaminated cell until January 19, 2021." ECF No. 542 at 2. After testing positive for COVID-19, Petitioner did not report any severe symptoms during his quarantine period. Shortly after quarantine, Petitioner started to exercise again. However, while he was exercising, on March 7, 2021, Petitioner began to suffer severe muscle pains and blood in his urine. After being admitted to the clinic, Petitioner was diagnosed with severe and aggressive rhabdomyolysis, which is the death of muscle fibers that release into the bloodstream and that can result in renal (kidney) failure. *See* ECF No. 542 at Exhibit 1; *see also,* ECF No. 544 (sealed BOP medical records). After reporting his symptoms, Petitioner was immediately hospitalized, from March 7, 2021 to March 16, 2021, for severe rhabdomyolysis after presenting with acute kidney issues. *Id.* Based on his supplemental medica records, while Petitioner was not previously diagnosed with rhabdomyolysis he has exhibited related symptoms as early as 2017. ECF Nos. 551, 552. Accordingly, Petitioner's severe rhabdomyolysis could have been triggered either by COVID-19 or by his return to the gym and strenuous exercise after recovering from COVID-19. ECF No. 544 at 27.[2] Based on the medical studies, there is a scientific basis for concluding that

---

[1] *See* Centers for Disease Control and Prevention, "COVID-19: People with Certain Medical Conditions," *CDC.gov,* (Updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[2] *See* WedMD, (Reviewed Mar. 17, 2021), https://www.webmd.com/a-to-z-guides/rhabdomyolysis-sygmptoms-causestreatments/. ("One of the nontraumatic causes of rhabdomyolysis is "extreme muscle strain, especially in someone who is an untrained athlete; this can happen in elite athletes, too, and it can be more dangerous if there is more muscle mass to break down.")

6

COVID-19 can cause people to develop severe rhabdomyolysis and acute kidney injury which can cause hospitalization and mortality.[3] Moreover, the CDC recognizes that chronic kidney disease of any stage can make someone more likely to get severely ill from COVID-19.[4] However, Petitioner has not been diagnosed with chronic kidney disease. Also, since Petitioner has been formally diagnosed with rhabdomyolysis, he has received guidance to prevent triggering symptoms and medical treatment. Accordingly, the Court finds that Petitioner has not presented direct and clear evidence showing extraordinary or compelling reasons that he is at particularized risk of serious illness should he contract COVID-19.

Second, Petitioner does show a potential risk of contracting the disease at his prison facility. Notably, in January 2021, Petitioner contracted COVID-19 at Butner Medium II FCI. As of May 24, 2021, the BOP has reported a total of 430 recovered past positive cases of COVID-19 for inmates, with zero current cases, and 75 recovered cases for staff (1 active) at Butner Medium II FCI.[5] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[6] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to

---

[3] *See* Magued W. Haroun, Vladyslav Dieiev, John Kang, et al, *Rhabdomyolysis in COVID-19 Patients: A Retrospective Observational Study*, 13 Cureus e12552 (2021); *see also,* Balraj Singh, Parminder Kaur, et al, *Rhabdomysolysis in COVID-19: Report of Four Cases*, 12 Cureus e10686 (2021).
[4] *See id.*
[5] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov,* https://www.bop.gov/coronavirus/
[6] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov,* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

7

determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner and about nine other co-defendants conspired to rob a grocery store at gun point. ECF No. 513 at ¶ 15. As part of the conspiracy, Petitioner entered the store, brandished, and pointed a firearm at two employees and a customer, forced them to get on the ground, and stole approximately $4,880 from the grocery store. *Id.* As a result of the robberies, the store employees from the robbery suffered psychological problems and some were unable to return to work on the night shift and sought mental health counseling. *Id.* at ¶ 21.

On the other hand, Petitioner does not have extensive career criminal record. For example, he does not have a juvenile record and his only prior conviction was at age 19 when he was convicted of illegal possession of alcohol and concealed weapon. *Id.* at ¶¶ 44-45. From ages 16 to 21, Petitioner was arrested for possession of marijuana, distribution of marijuana, possession of a firearm, and violation of restricted license- learner's permit. *Id.* at ¶¶ 49-52. All charges were dismissed. As a result of his record and criminal history of II, Petitioner was sentenced 24 months imprisonment on Counts One and Two, to be served concurrently, and 84 Months imprisonment on Count Three to be served consecutively, with Count 1, followed by five years of supervised release. ECF Nos. 281, 283. To date, Petitioner has about completed 27 months of his sentence, less than 30 percent of his total sentence, and he is scheduled for release on December 7, 2026.

While in prison, Petitioner has not demonstrated evidence of rehabilitation. To his credit,

Petitioner has completed one educational course, earned his GED, and is on the waiting list for a drug education program. *See* ECF No. 547 at Exhibit 3. Moreover, since September 2020, Petitioner has also been assigned as a laundry orderly. *Id.* However, Petitioner has received two disciplinary infractions. In November 2019, Petitioner was cited for Disruptive Conduct (Greatest) and Assaulting without Serious Injury for which he was sanctioned to 41 days loss of good conduct time, 15 days segregation, 6 months loss of commissary and MP3 player privileges, 4 months loss of visitation privileges, and 90 days loss of phone privileges. ECF No. 550. Then in September 2020, Petitioner was cited for Disruptive Conduct (High) for which he was sanctioned to 27 days loss of good conduct time, 30 days segregation, and 6 months loss of commissary privileges. *Id.; see also,* ECF No. 547 at Exhibit 3. In response to these disciplinary infractions, Petitioner argues that his untreated rhabdomyolysis condition has led to loss of memory and consciousness which caused him to yell incomprehensively and nonsensically and have an altered mental state. ECF No. 542 at 7. Thus, Petitioner alleges that his memory of the September 2020 event is non-existent because of his underlying condition. However, the record shows that the September 2020 incident was caused by Petitioner ingesting K2, commonly known as spice or synthetic marijuana. ECF No. 544 at 65-66, 68-69, 111-120. Notably, corrections officers and hospital staff observed behavior consistent with the ingestion of synthetic marijuana. *Id.* As a result, the hospital consulted with poison control and discovered that side effects related to ingestion of synthetic marijuana can include "rhabdo[myolysis] ..." *Id.* at 112. Thus, his ingestion of K2 caused him to trigger his rhabdomyolysis which led to the incident.

Finally, Petitioner's release plan is not supportive of his release. Petitioner states that he would move back with his parents with whom he has a positive relationship, and who are currently caring for his three-year old daughter. ECF No. 513 at ¶¶ 54, 58. However, both of Petitioner's

parents are disabled and his mother is unable to be employed due to her medical condition. *Id.* Although, Petitioner indicated that he is eager to work with his brother upon release, there is no evidence showing that his brother would hire him or whether Petitioner could physically work given his rhabdomyolysis condition.

Overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner did not provide clear evidence showing a direct connection with how his underlying condition places him at high risk for serious illness should he contract COVID-19 again. Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for compassionate release, ECF No. 542, is **DENIED**. Furthermore, Petitioner's *pro se* Motion for Compassionate release, ECF No. 509, is **Moot**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
May 27, 2021

UNITED STATES DISTRICT JUDGE